UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALEJANDRO GILBERTO RAMIREZ
DIAZ,

      Petitioner,

v.                                      Case No.  2:26-cv-608-JES-NPM

WARDEN, FLORIDA SOFT SIDE
SOUTH DETENTION FACILITY,
et al.,

      Respondents.
_____/

## OPINION AND ORDER

Before the Court are Petitioner Alejandro Gilberto Ramirez Diaz's petition for writ of habeas corpus (Doc. 1), the government's response (Doc. 8), Ramirez Diaz's motion for preliminary injunction (Doc. 21), and the government's response to the motion (Doc. 23).  For the reasons below, the Court grants the petition to the extent set forth in this Order.

### I.   Background

Ramirez Diaz is a native and citizen of Cuba who entered the United States on March 13, 2022.  (Doc. 1 at 29).  He was apprehended soon after entry, and on March 17, 2022, Ramirez Diaz was issued a notice to appear.  (Id.)  On the same day, he was released on an Order of Release on Recognizance.  (Id.)  As part of the conditions for release, Ramirez Diaz was ordered to

periodically report to Immigration and Customs Enforcement (ICE), which he has done.

On October 21, 2025, after filing an application for asylum and withholding of removal before an immigration judge, the Department of Homeland Security (DHS) moved to dismiss the removal proceedings, and the motion was granted. (Doc. 21 at 2). Ramirez Diaz was then immediately detained by Immigration and Customs Enforcement (ICE) for expedited removal, but the record contains no charging document explaining the authority for his detention. (Doc. 21 at 2).

Remarkably, after Ramirez Diaz filed this habeas action, and without an order of removal or any other court authorization, DHS removed him from the United States to Cuba. (Doc. 21 at 2-3). A deportation officer informed Ramirez Diaz's counsel that his removal resulted from a misunderstanding or oversight. (Id. at 4). The government facilitated Ramirez Diaz's return to the United States "via parole for a significant public benefit," where he was immediately re-detained. (Doc. 21 at 3; Doc. 23 at 2). Ramirez Diaz complied will the government's directives for return by obtaining the advance parole documentation, buying his own plane ticket, boarding a commercial flight, and presenting himself for inspection through standard port-of-entry procedures. (Doc. 25 at 3).

2

After the Court ordered the government to provide the basis for Ramirez Diaz's post-return detention, the government contended that he is currently detained under 8 U.S.C. § 1226(a), "and is therefore entitled to an individualized bond hearing." (Doc. 23 at 3). However, on May 15, 2026, the government conceded that the record is incomplete and that government counsel "has requested additional documentation regarding the limited purpose of parole for a significant public benefit and will move to supplement the record should it be received. The undersigned has also requested documentation of a warrant as required by 8 U.S.C. § 1226(a) and will move to supplement the record should it be received." (Id. at 4). Fifty-five days have passed since the government's concession and assurance that it will provide additional documentation, but the only supplement filed is a Declaration from Deportation Officer Jahmal Ervin. (Doc. 27-1). The declaration did not provide any additional or helpful information.

## II.  Discussion

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). It is thus "well established that the Fifth Amendment entitles aliens to due process

3

of law in deportation proceedings." Reno v. Flores, 507 U.S. 292, 306 (1993).

The Supreme Court has long recognized that "due process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1976). Courts looks to three factors when considering the process due in a given situation: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

All three factors weigh in Ramirez Diaz's favor. First, his interest in freedom from detention "lies at the heart of the liberty" the Due Process Clause protects. Zadvydas, 533 U.S. at 690. Second, the risk of erroneous deprivation of that interest is substantial here, and in fact occurred when Ramirez Diaz was illegally deported to Cuba and forced to help facilitate his own return to the United States. When DHS detained Ramirez Diaz in 2022, a DHS officer found him eligible for supervised release. Since then, he has kept his criminal record clean, has complied with all terms of supervision, and has proven that he is no flight

4

risk by attending his removal hearings.  What is more, ICE clearly exceeded its statutory authority when it designated him for expedited removal after revoking his parole.  See 8. U.S.C. § 1225(b)(1)(A)(iii)(II) (excluding aliens who have been paroled in the United States from the class eligible for expedited removal).  That the government now concedes that Ramirez Diaz's detention is actually governed by 8 U.S.C. § 1226(a) does not change the Court's conclusion on this factor because § 1226(a) authorizes detention only "[o]n a warrant issued by the Attorney General."  8 U.S.C. § 1226(a); see 8 C.F.R. § 1236.1(b)(1) (detention effected "under the authority of Form I-200, Warrant of Arrest").  Despite having months to do so, the government has not provided a copy of the warrant and has identified no documented authority for Ramirez Diaz's detention.

Finally, the government has not established any legitimate interest in Ramirez Diaz's continued detention.  Immigration detention has two statutory goals: to ensure the noncitizen's appearance at future immigration proceedings and to prevent danger to the community.  Zadvydas, 533 U.S. at 690.  Ramirez Diaz's detention serves neither purpose.  The immigration official who considered his circumstances in 2022 determined that he should be paroled on recognizance, and he has since remained out of trouble, applied for asylum, and participated in his removal proceedings.

5

### III. Conclusion

The Court finds that ICE violated Ramirez Diaz's right to due process by revoking his parole, designating him for expedited removal, illegally removing him to Cuba, and now detaining him without a warrant and without reasonable notice and a meaningful opportunity to be heard.  See United States v. Smith, 30 F.4th 1334, 1338 (11th Cir. 2022) (recognizing that "the complete denial of the opportunity to be heard on a material issue is a violation of due process which is never harmless error" (cleaned up)).

Accordingly, it is hereby **ORDERED**:

1.    Alejandro Gilberto Ramirez Diaz's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED.**

2.    Respondents shall release Ramirez Diaz from custody under reasonable conditions of supervision within 24 hours of this Order.

3.    Respondents shall facilitate Ramirez Diaz's transportation from the detention facility by notifying his counsel or family when and where he can be collected.

4.    The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on July 9, 2026.

_____

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

6